IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02332–MSK–KMT

MODESTAR LIYOKHO,

      Plaintiff,

v.

COLORADO TECHNICAL UNIVERSITY (PUEBLO CAMPUS),

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This matter comes before the court on Plaintiff's failure to comply with the court's order that she appear for her deposition scheduled on September 20, 2013 at 9:00 a.m. For the following reasons, the court respectfully recommends that Plaintiff's "First Amended Complaint under Title VI of Civil Right [sic] Act of 1964" (Doc. No. 45 [Am. Compl.]) be DISMISSED as a sanction for disobeying this court's orders.

## BACKGROUND

      Plaintiff alleges that Defendant Colorado Technical University (CTU) discriminated against her based on her race, religion, and national origin, in violation of Title VI of the 1964 Civil Rights Act, by terminating her from the Associate's Degree Nursing program at CTU's Pueblo campus. (*See generally* Am. Compl.) On April 30, 2013, the court entered a Scheduling Order. (Doc. No. 57.) Based on the parties agreement, the Scheduling Order stated that

Plaintiff's deposition would occur on June 11, 2013 at 9:30 a.m.  (*Id.* at 6.)  The same day the Scheduling Order was entered, CTU served Plaintiff with a Notice of Deposition stating that Plaintiff's deposition would indeed be taken on June 11, 2013 at 9:30 a.m. at the office of CTU's local counsel, Fisher & Phillips LLP, in Denver, Colorado.  (Defs.' Mot. Compel, Doc. No. 65, at Ex. A.)

On May 29,[1] Plaintiff called CTU's counsel, Neil Goldsmith, to discuss the upcoming deposition.  (Defs.' Mot. Compel ¶ 2.)   Plaintiff informed Mr. Goldsmith that she no longer resides in Colorado and now resides in Goldsboro, North Carolina.  (*Id.*)  Plaintiff then requested a telephonic deposition, which Mr. Goldsmith rejected.  (*Id.*)

On May 31, Mr. Goldsmith sent a follow-up letter to Plaintiff summarizing the May 29, 2013 conversation and offering, as an accommodation, to take Plaintiff's deposition in Chicago, where CTU's lead counsel is located, instead of Denver.  (*Id.*, Ex. B.)  Mr. Goldsmith assumed that Chicago might be a more desirable location for Plaintiff's deposition, given that Chicago is closer to Goldsboro than Denver.  (*Id.*)  Mr. Goldsmith also concluded that it would be best to continue Plaintiff's deposition as scheduled for June 11, 2013 to a later date.  (*Id.*)

On June 6, Plaintiff responded to Mr. Goldsmith's May 31 letter via telephone.  (*Id.* ¶ 4.)  Plaintiff refused to sit for a deposition in Denver or Chicago and reiterated her request to be deposed via telephone.  (*Id.*)  In the alternative, Plaintiff requested that CTU pay for her airfare to Denver or Chicago.  (*Id.*)  Mr. Goldsmith rejected these requests.  (*Id.*)

---

[1] All events referred to herein occurred in 2013, unless otherwise noted.

2

On June 7, Mr. Goldsmith sent a follow-up letter to Plaintiff summarizing their June 6 conversation and asking Plaintiff to reconsider her opposition to sitting for a deposition in Denver or Chicago.  (*Id.*, Ex. C.)  On June 12, Plaintiff agreed to sit for a deposition in Chicago. (*Id.*, Ex. D.)

On June 17, Mr. Goldsmith sent Plaintiff an email seeking available dates for a deposition during the week of July 15.  (*Id.,* Ex. E.)  Mr. Goldsmith requested that Plaintiff provide him with a firm date by June 28, 2013.  (*Id.*)  On June 27, 2013, Mr. Goldsmith sent Plaintiff a follow-up email informing her that if the week of July 15 did not work for her, CTU was also available to take her deposition on July 22, 23, or 24.  (*Id.,* Ex. F.)  Plaintiff responded, "I will let you know once I get [a] flight."  (*Id.*)

On July 1, Mr. Goldsmith called Plaintiff again to inquire about a deposition date.  (*Id.* ¶ 9.)  Plaintiff informed Mr. Goldsmith that she was still in the process of booking a flight and that she would get back to him by July 3.  (*Id.*)  On July 5, Plaintiff sent Mr. Goldsmith an email stating that she was still looking for a flight to Denver or Chicago.  (*Id.,* Ex. G.)

On July 10, Mr. Goldsmith sent Plaintiff a letter requesting, yet again, a firm date for her deposition.  (*Id.,* Ex. H.)  The letter further informed Plaintiff that if she did not provide a firm date by July 12, 2013, CTU would file a motion to compel her deposition.  (*Id.*)  On July 19, 2013, Plaintiff responded to Mr. Goldsmith letter via email, stating, "i [sic] will be getting back to you by next week to determine what day would work best for you once i [sic] have the ticket money."  (*Id.*, Ex. I.)

In light of Plaintiff's failure to propose a date certain for her deposition, Defendant filed a Motion to Compel on July 24. (*See* Defs.' Mot. Compel) The court held a Motion Hearing on Defendant's Motion to Compel on September 4, 2013.[2] At the hearing, Plaintiff represented to the court that she "definitely [could] be here [in Denver] for having [her] deposition taken on the 20th of September." After confirming that date worked for CTU, the court granted CTU's Motion to Compel to the extent that it sought to compel Plaintiff's deposition and directed CTU to send Plaintiff a Notice of Deposition setting Plaintiff's deposition for September 20, 2013 at 9:00 a.m. in Denver, Colorado at the law office of Fisher & Phillips.[3] (*See* Courtroom Minutes, Doc. No. 82, filed Sept. 4, 2013.) CTU served the Notice of Deposition on Plaintiff that same day. (*See* Def.'s Resp. Mot. Continuance, Doc. No. 89, Ex. A.)

On the afternoon of September 18, less than 48 hours before Plaintiff's deposition was scheduled to occur, Plaintiff conveyed a written settlement offer to Mr. Goldsmith. (*Id.* ¶ 5.) The following day, September 19, at approximately 11:45 a.m,[4] Plaintiff called Mr. Goldsmith, to inquire about her settlement offer. (*Id.* ¶ 6.) Mr. Goldsmith informed Plaintiff that he would

---

[2] The day prior to the Motion Hearing, Plaintiff sought to reschedule the hearing because she was "in the process of hiring an Attorney/expert representation for Legal help and the expert attorney will not have time to review all the documents on time and allow sufficient time to prepare for this case." (Doc. No. 81, filed Sept. 3, 2013.) That Motion was denied as moot on September 5, 2013, after the Motion Hearing had been completed. (*See* Order, Doc. No. 83.)

[3] The court also directed Plaintiff to fiole a notice of change of address and telephone number to reflect her new residence in Goldsboro, North Carolina. (*Id.*) As of the date of this Recommendation, Plaintiff has not complied with this directive.

[4] Although Defendant's Response to Plaintiff's Motion for Continuance refers to the time of various events in Central Standard Time, the court has converted those times to Mountain Standard Time for sake of clarity and uniformity.

discuss Plaintiff's offer with his client, but that all activity in the case would proceed as

scheduled.  (*Id.*)  Mr. Goldsmith further mentioned Plaintiff's upcoming deposition and stated

that, although he would not be present in Denver for the deposition, one of CTU's other

attorneys, Lisa McGarrity, would be and could speak with Plaintiff about her settlement offer

and any other issues.  (*Id.*)  Plaintiff responded, "Okay."  (*Id.* ¶ 7.)  At no point during that

conversation did Plaintiff mention that her son was very sick and that she would not be able to

attend her deposition as scheduled.  (*Id.*)

Later that afternoon, at 4:15 p.m., Plaintiff sent Mr. Goldsmith an email stating, "I would

like to request you for a motion for continuance in the deposition schedule tomorrow as I had

planned to travel with my son and he is very sick."  (*Id.*, Ex. B.)  At 4:38 p.m., Plaintiff emailed

Mr. Goldsmith a copy of her Motion to Continuance.  (*Id.,* Ex. C.)  4:39 p.m., CTU's counsel

received electronic notice from the court's CM/ECF system that Plaintiff's Motion for

Continuance had been filed with the court.  (*Id.* ¶ 9.)

The following morning, September 20, the date Plaintiff deposition was scheduled to

commence, CTU filed its Response to Plaintiff's Motion for Continuance.  (*See id.*)  Later that

morning, Plaintiff filed a Supplement to her Motion for Continuance attaching a "Emergency

Department Return to Work/School Statement" from Wayne Memorial Hospital for Plaintiff's

son.  (Doc. No. 92.)

That same day, the court convened a Telephonic Motion Hearing regarding Plaintiff's

Motion for Continuance.  (*See* Doc. No. 93.)  During the hearing, the court asked Plaintiff what

travel plans she had made to attend her deposition.  Plaintiff indicated that she had intended to

drive from Goldsboro to Denver.  The court then asked Plaintiff how long she believed it would

take her to drive from her home to Colorado.  Plaintiff represented to the court that it would take

her twelve hours to drive from North Carolina to Colorado.  A search on Google Maps reveals

that a one-way trip by automobile from Goldsboro, North Carolina to Denver Colorado would

cover 1,728 miles and require 25 hours to complete.[5]

## ANALYSIS

Plaintiff bears the responsibility of complying with court orders and prosecuting her case.

The Federal Rules of Civil Procedure give a district court ample tools to deal with recalcitrant

litigants.  *See Jones v. Thompson,* 99 F.2d 261, 264 (10th Cir. 1993).  Fed. R. Civ. P. 16(f)(1)(C)

and 37(b)(2) and D.C.COLO.LCivR 41.1 enable the court to impose sanctions, including

dismissal, when a party fails to obey pretrial orders.  In particular, Rule 37(b)(2) permits a court

to issue an order "dismissing the action or proceeding in whole or in part" where a party fails to

obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also*

*Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992).

The Tenth Circuit has recognized that "[a] district court undoubtedly has discretion to

sanction a party for failing to prosecute or defend a case, or for failing to comply with local or

---

[5] *See Carson v. Adams*, No CV 09-9194-CAS (AGR) 2013 WL 169845, at *2 n.3 (C.D. Cal. Jan. 14, 2013) ("Courts have generally taken judicial notice of facts gleaned from internet mapping tools such as Google Maps or Mapquest"). *Cf. Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1219 n. 2 (10th Cir. 2007) (taking judicial notice of a distance between two geographical points based on a website).

federal procedural rules." *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002).  However, a

dismissal is a more severe sanction, and generally requires the court to consider certain criteria.

*AdvantEdge Bus. Group v. Thomas E. Mestmaker & Assoc., Inc.,* 552 F.3d 1233, 1235 (10th Cir.

2009).  In *Ehrenhaus,* the Tenth Circuit set forth a non-exhaustive list of factors to be considered

when evaluating grounds for dismissal of an action.  965 F.2d at 921.  The factors are:  "(1) the

degree of actual prejudice to the defendant; (2) the amount of interference with the judicial

process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance

that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of

lesser sanctions." *Id.* (internal quotations and citations omitted); *see also Gates Rubber Co. v.

Bando Chems. Indus.*, 167 F.R.D. 90, 101 (D.Colo.1996).  "[D]ismissal is warranted when 'the

aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their

merits.'" *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir

.2007) (quoting *Ehrenhaus*, 965 F.2d at 921).

　　　　The court finds that the *Ehrenhaus* factors weigh in favor of a dismissal of this action.

First, the court finds that Defendant has been prejudiced by Plaintiff's failure to comply with the

court's order granting Defendant's Motion to Compel and setting Plaintiff's deposition for

September 20, 2013.  CTU spent nearly three months—from April 30, 2013 through July 24,

2013—attempting to negotiate with Plaintiff a date for her deposition, only to be forced to file a

motion to compel.  After the court ordered that Plaintiff's deposition would proceed on

September 20, CTU's Chicago-based lead counsel, Ms. McGarrity, made air and hotel

reservations for September 19 and 20 and CTU also arranged for a court reporter and

videographer to attend the deposition. Further, because Plaintiff did not contact CTU's counsel regarding her Motion for Continuance until late in the day on September 19, Ms. McGarrity actually traveled to Denver. However, because Plaintiff elected not to travel to Denver, CTU's expenditures and efforts were taken in vain.

The court also finds that Plaintiff has interfered significantly with the judicial process. CTU has a right to take Plaintiff's deposition under Fed. R. Civ. P. 30 and, absent extreme hardship, a Plaintiff is required to appear in person for her deposition in the forum where she filed suit. *Srebnik v. Dean,* No. 05-cv-01086-WYD-MJW, 2006 WL 2331014 at *1 (D. Colo. June 20, 2006); *see also United States v. Rock Springs Visa Dep't,* 185 F.R.D. 603, 604-605 (D. Nev. 1999) (right to take deposition in person is particularly compelling when it involves a party). Plaintiff first interfered with this right when she refused for several months to provide a firm date, location, and time for her deposition, thereby forcing CTU to file its Motion to Compel. More importantly, Plaintiff further and significantly interfered with the judicial process by disobeying the court's order compelling her deposition, which was premised almost entirely on Plaintiff's representation that <u>she</u> was willing and able to appear in Denver on September 20.

As to the third factor, the court finds that Plaintiff willfully disregarded the court's order that she appear for her deposition on September 20. The court need not resolve whether Plaintiff's son was indeed "very sick" because it finds that his purported illness was not the actual reason Plaintiff failed to appear in Denver for her deposition. Instead, it is clear to the court that Plaintiff did not have any intention at all of appearing for her deposition. Because it takes approximately 25 hours to travel from Goldsboro to Denver, Plaintiff would had to have

left Goldsboro no later than 10:00 a.m. EST (or 8:00 a.m. MST) on September 19 in order to

arrive in Denver at 9:00 a.m. MST on September 20.  Even then, Plaintiff would have had to

accomplish the incredible feat of driving for 25 hours straight through the night.[6]

However, two-and-a-half-hours <u>after</u> this "departure deadline," Plaintiff was still in

Goldsboro emailing Mr. Goldstein about her settlement offer.  Notably, at that time, Plaintiff

made absolutely no mention of the fact that he son was ill.  Instead, this purported justification

for her inability to attend her deposition came to light at 4:15 p.m. on September 19—less than

17 hours before she needed to be in Denver.

It is likewise clear to the court that Plaintiff did not simply make a good faith mistake in

believing it would take her only 12 hours to travel to attend her deposition.  Plaintiff admits that

she recently relocated from Pueblo, Colorado to North Carolina and, therefore, was well aware

of the amount of time it would take her to travel back to Colorado.  Indeed, for this reason,

Plaintiff's representation that it would take her 12 hours to travel to Colorado for her deposition

was a clear attempt to deceive the court.

Altogether, in light of the fact that Plaintiff conveyed a settlement offer to CTU's counsel

less than 48 hours before her deposition; failed to leave Goldsboro more than 25 hours before her

deposition was scheduled to begin; and only raised the fact that her son was ill after CTU's

counsel informed her that her deposition would proceed as scheduled (notwithstanding her

---

[6] Much more realistically, especially considering that Plaintiff was planning on traveling with her son who apparently is chronically ill, Plaintiff would have had to leave Goldsboro for Denver on Wednesday, September 18, 2013.  However, on that afternoon, Plaintiff was conveying her proposed settlement offer to CTU's counsel.

settlement offer), the court finds that Plaintiff had no intention of appearing for her deposition in Denver.  As a consequence, the court finds that Plaintiff blatantly and willfully disregarded this court's order compelling her deposition.

As to the fourth *Ehrenhaus* factor, the court specifically advised Plaintiff that her case could be dismissed if she failed to appear for her deposition as ordered.

Finally, as to the fifth *Ehrenhaus* factor, the court finds that Plaintiff's refusal to provide a date and time for her deposition and subsequent failure to obey this court's order setting her deposition to be unacceptable and that such litigation behavior should not be tolerated.  Further, because Plaintiff is proceeding *in forma pauperis,* a monetary sanction would be ineffective.  Similarly, because the injury from Plaintiff's failure to comply is as much to the judicial system as it is to Defendants, a sanction limiting evidence would bear no substantial relationship to Plaintiff's misconduct.  Altogether, under the circumstances presented, no lesser sanction would be effective and dismissal is an appropriate sanction.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Plaintiff's First Amended Complaint (Doc. No. 45) be DISMISSED.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 2nd day of October, 2013.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge